**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ELOISE BACKER, *et al.*,

    Plaintiffs,

v.

POCONO TRANQUIL GARDENS, LLC, *et al.*,

    Defendants.

NO. 3:16-CV-01847

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before me are Defendant Pocono Tranquil Gardens, LLC's ("Defendant" or "PTG") Motion for a More Definite Statement and a Motion to Dismiss (Doc. 20) Plaintiffs Eloise Backer and Orlando DePascale, Jr.'s Amended Complaint (Doc. 11). For the reasons that follow, Defendant's motions will be denied.

### **I. Factual Background**

The facts, as set forth in Plaintiffs' Amended Complaint (Doc. 11), are as follows:

Plaintiffs are the legal representatives and co-executors of the estate of Orlando DePascale, Sr. ("Decedent"). (*Id*. at ¶ 1). Decedent was an 88-year-old man who had lived in New Jersey his entire life and resided with his son until 2014, when he began to exhibit signs of dementia and became unable to adequately care for himself. (*Id.* ¶¶ 17, 18). This led to Plaintiffs' decision to admit Decedent into Defendant PTG's facility in East Stroudsburg, Pennsylvania. (*Id.* ¶¶ 1- 3, 17-22).

Plaintiffs chose PTG because it offered special care for adults with dementia and was located within a relatively short driving distance from Plaintiffs. (*Id.* ¶ 20). On June 13, 2014, Decedent became a "respite care" resident of PTG, defined as "a short term stay of one week or longer for individuals who need assistance." Indeed, Decedent's admission to PTG was considered temporary by his family. (*Id.* ¶ 21).

At the time of Decedent's admission, his family provided PTG with information regarding Decedent's dietary requirements as he was diabetic. This information included a list of approved foods for each meal and the timing for each meal. (*Id.* ¶ 28). Moreover,

Decedent's family requested that he be given a bed with a bed rail because he might attempt to get out of bed in the middle of the night. (*Id.* ¶ 23). In March, 2014, prior to his admission to PTG, Decedent had fallen and suffered a broken hip. As a result, Decedent walked with the aid of a walker and required a bed rail at home. (*Id.* ¶ 24). Plaintiffs' request for a bed rail was denied by PTG staff who stated to Decedent's family that bed rails were not allowed under PTG's policy. (*Id.* ¶ 25).

Within a short time of his admission, Decedent was hospitalized twice due to elevated blood sugar levels. Indeed, PTG confirmed that Decedent had been given cookies and ice cream with meals and in-between meals, which was not in compliance with his dietary needs. (*Id.* ¶¶ 29-33).

Shortly thereafter, on June 16, 2014, Decedent fell out of his bed and suffered a deep gash on his left arm. (*Id.* ¶ 34). The nurse on staff treated Decedent's wound and placed him back in bed, but did not determine whether Decedent had suffered head trauma at the time of the fall or order a medical examination of the Decedent. (*Id.* ¶¶ 34-36).

On July 1, 2014, Decedent was transported to Pocono Medical Center after a third episode of dangerously elevated blood sugar. Upon receiving treatment at the hospital, Decedent returned to PTG. (*Id.* ¶¶ 40-41).

Shortly thereafter, on the evening of July 1, 2014, Decedent again fell out of bed and hit his head on the floor. Decedent remained on the floor for approximately one hour before being discovered by the PTG staff, who placed Decedent back in his bed and noted that he appeared disoriented and confused, but did not transport him to a hospital, contact a physician to examine Decedent, or immediately contact Decedent's family. (*Id.* ¶¶ 42-47).

On July 2, 2014, Decedent was found unresponsive in his bed and was taken to Pocono Medical Center, "where he was found to have bleeding on the brain and was comatose." (*Id.* ¶¶ 48-49). Decedent died on July 3, 2014. (*Id.* ¶ 50). A medical examination revealed that Decedent died from a "subdural hematoma with subfalcine herniation and midline shift that he suffered as a result of the fall and hitting his head on the floor." (*Id.* ¶ 51).

The Pennsylvania Department of Public Welfare Board later investigated the Defendant facility and found numerous violations, including several relating to PTG's failure to follow treatment guidelines with respect to Decedent. (*Id.* ¶ 52).

In light of the foregoing, Plaintiffs instituted the instant suit, alleging negligence in Count I, gross negligence in Count II, an action pursuant to the Pennsylvania Wrongful Death Act in Count III, and an action pursuant to the Pennsylvania Survivor' s Act in Count IV. (*See* Docs, 1, 11).

Defendant PTG has filed various motions, including a motion to dismiss, for a more definite statement, and to strike certain allegations. (Doc. 20).[1] The motions have been fully briefed (Docs. 21 & 23), and are now ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not

---

[1] PTG's brief does not comport with Local Rule 7.8(a), which states that "[a] brief may address only one motion." Counsel for PTG would be well advised to familiarize himself with, and follow, the Local Rules before filing any other documents in this Court.

3

required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the

motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

1. **Motion to Dismiss "Count II, Gross Negligence, for Failure to State a Claim and to Strike Plaintiffs' Request for Punitive Damages and Allegations of Gross Negligence and Wantonness"** (Doc. 20, § A)

PTG first argues that "Plaintiffs have failed to state a cause of action for gross negligence, and Plaintiffs' request for punitive damages, including allegations of gross negligence and wantonness should be stricken from the Amended Complaint with prejudice." (Doc. 21, at 3). I disagree.

Gross negligence and wantonness are both highly fact-specific causes of action, demanding factual and legal analyses which are improper at a motion to dismiss stage. In order to decide whether the conduct at issue "rise[s] to the level of outrageous conduct that is required to substantiate a claim for gross negligence or punitive damages," (Doc. 21, at 4), as PTG requests, I would first be compelled to resolve disputes and questions of fact as well as conduct a reasonableness analysis to assess the existence and seriousness of any of Decedent's ailments, what accommodations, if any, were necessary, and the adequacy of any precautions taken by PTG, to determine whether PTG was grossly negligent or wanton. This, at a motion to dismiss, I cannot do.

To the extent that PTG's motion challenges the sufficiently of the pleadings in the Amended Complaint, I find that Plaintiffs state a plausible claim for relief.

Pennsylvania courts generally view gross negligence as "a want of even scant care, but something less than intentional indifference to consequences of actions." *Fidelity Leasing Corp. v. Dun & Bradstreet, Inc.*, 494 F.Supp. 786, 790 (E.D. Pa. 1980). Gross negligence also has been defined as a "failure to perform a duty in reckless disregard of the

5

consequences or with such want of care and regard for the consequences as to justify a presumption of willfulness of wantonness." *Williams v. State Civil Serv. Comm'n*, 9 Pa.Cmwlth. 437, 306 A.2d 419, 422 (1973), *aff'd*, 457 Pa. 470, 327 A.2d 70 (1974). To find gross negligence, there must be "an extreme departure from ordinary care." *Douglas W. Randall, Inc. v. AFA Protective Systems, Inc.*, 516 F.Supp. 1122, 1126 (E.D.Pa.1981), *aff'd*, 688 F.2d 820 (3d Cir. 1982).

> On the other hand,
>
> > wanton misconduct is something different from negligence, however gross-different not merely in degree but in kind, and evincing a different state of mind on the part of the tortfeasor. Negligence consists of inattention or inadvertence, whereas wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury[.]

*Kasanovich v. George*, 348 Pa. 199, 203, 34 A.2d 523, 525 (1943).

Finally, punitive damages may be awarded when the plaintiff establishes that the defendant "acted in an outrageous fashion" due to either an evil motive or in "reckless indifference to the rights of others." *Phillips v. Cricket Lighters*, 584 Pa. 179, 189, 883 A.2d 439, 445 (2005) (citation omitted). Under Pennsylvania law "punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchison ex rel. Hutchison v. Luddy*, 582 Pa. 114, 124, 870 A.2d 766, 772 (2005) (citation omitted).

Here, the Amended Complaint sufficiently alleges that Decedent was a respite care patient at the Defendant facility, whose staff knew that Decedent was a fall risk and, despite that, refused Plaintiffs' requests for a bed with rails, thus, plausibly contributing to Decedent's fall and death. (Doc. 11, ¶¶ 23-25). Moreover, the Amended Complaint alleges that, despite the fact that Plaintiffs provided PTG with a list of Decedent's dietary requirements, within a week of being admitted to the facility, Decedent, on two occasions, was transported to Pocono Medical Center because his blood sugar was dangerously elevated, which may be indicative of a careless disregard for Decedent's well-being on

PTG's part. (*Id*. ¶¶ 28-29). Moreover, while a resident of PTG, Decedent suffered a deep gash on his left arm when he fell out of his bed. Although the PTG staff treated his wounds, they did not determine whether Decedent had suffered any head trauma at the time of his fall. (*Id.* ¶ 35). On July 1, 2014, Decedent was transported to Pocono Medical Center for yet another episode of dangerously elevated blood sugar, and shortly after returning to Defendant's facility, Decedent *again* fell out of his bed, hitting his head. (*Id.* ¶¶ 40, 42-43). Decedent remained on the floor for approximately one hour before he was discovered by PTG staff, after which, he was placed back in his bed. (*Id.* ¶ 44). Although the staff noted that Decedent was disoriented and confused, PTG did not transport Decedent to the hospital or contact a doctor for a medical examination. (*Id.* ¶ 46). The following day, Decedent was found unresponsive and taken to Pocono Medical Center where he was diagnosed as comatose with bleeding on the brain. (*Id.* ¶ 49). Shortly thereafter, Decedent died from the effects of his brain injury. (*Id.* ¶ 50).

Thus, Plaintiffs sufficiently allege that prior to the incident that resulted in Decedent's death, Defendant had constructive knowledge and reason to believe that Decedent was at risk of harm under the conditions at PTG. (*Id.* ¶ 63). Plaintiffs sufficiently allege that Decedent suffered the fall, injury, and death as a direct and proximate result of PTG's gross negligence and wanton disregard for Decedent's safety and well-being. (*Id.* ¶ 64).

As the Pennsylvania courts have held, "the determination of whether an act or failure to act constitutes negligence, of any degree, in view of all the evidence has always been particularly committed to determination by a jury." *Bloom v. Dubois Reg'l Med. Ctr.,* 409 Pa. Super. 83, 99, 597 A.2d 671, 679 (1991) (citation omitted). My only duty at this stage is to determine whether Plaintiffs state a claim as to their gross negligence and punitive damages claims. I find that they do; the above-cited facts state a *prima facie* case for deviations from the standard of care that were wanton, reckless, or substantially above that of ordinary negligence, especially in light of Decedent's repeated elevated blood sugar episodes, Decedent's repeated falls, his fatal brain injuries, the apparent lack of accommodations, monitoring, and delayed and inadequate care, which plausibly contributed

to Decedent's death.

2. **Motion to Strike Plaintiffs' Request for Attorney's Fees** (Doc. 20, § B)

PTG next argues that Plaintiffs' requests for attorneys' fees and costs in the Amended Complaint should be stricken with prejudice because in Pennsylvania, attorneys' fees are recoverable from an adverse party "only when provided for by statute or when clearly agreed to by the parties." *Fidelity-Philadelphia Trust Co. v. Philadelphia Transportation Co.*, 404 Pa. 541, 548, 173 A.2d 109, 113 (1961).

It is true that Plaintiffs do not invoke any statutory authority or any agreement between the parties for an award of attorneys' fees for the causes of action described in Plaintiffs' Amended Complaint. They argue, however, that they "are not in possession of all relevant materials, including all agreements and documents pertaining to the terms of Decedent's stay and any materials that may establish whether any agreement between the parties included provisions providing for the recovery of attorney's fees in the event of litigation arising out of or relevant to the subject matter of any such agreement." (Doc. 23, at 26-27). Thus, Plaintiffs argue, "[d]iscovery is clearly required with respect to the issues concerning negligence and damages." *Id.* I agree.

PTG's request that any mention of attorney's fees and costs be stricken from the Amended Complaint with prejudice is, at this early stage of litigation, denied.

3. **Motion for a More Definite Statement** (Doc. 20, at § C)

Finally, PTG argues that "Plaintiffs should be directed to re-plead their Amended Complaint with the specificity required under the Federal Rules of Civil Procedure." (Doc. 21, at 5). According to PTG, the Amended Complaint is lacking because it "contains general, non-specific averments regarding the alleged negligence of Defendant" as well as "general, non-specific averments of agency against Moving Defendant without any facts to demonstrate an agency or employment relationship." (*Id.* at 5-6). Moreover, they argue, "Plaintiffs make reference to unnamed and unidentified members of the 'PTG staff' and seeks *(sic)* to hold Moving Defendant jointly and severally liable with unnamed and unidentified defendants, John Does #1-10 and ABC Corps. #1-10." (*Id.* at 7).

8

Federal Rule of Civil Procedure 12(e) permits a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rule 12(e) is part of the "district court's case-management arsenal," *Twombly*, 550 U.S. at 593 n. 13, which, in conjunction with the rest of Rule 12 and Rule 8, serves "to frame and govern [the] court's assessment of the quality of a pleading." *Sony BMG Music Entm't v. Cloud*, 2008 WL 3895895, at *2 (E.D. Pa. Aug. 22, 2008). Generally speaking, "Rule 12(e) motions are disfavored in light of the liberal pleading standards established by Fed. R. Civ. P. 8(a)." *Transport Int'l Pool, Inc. v. Ross Stores, Inc.*, 2009 WL 1033601, at *2 (E.D. Pa. Apr. 15, 2009); *see also a Country Classics at Morgan Hill Homeowners' Ass'n, Inc. v. Country Classics at Morgan Hill, LLC,* 780 F. Supp. 2d 367, 371 (E.D. Pa. 2011) ("[M]otions for a more definite statement are"highly disfavored.'") (citation omitted).

I find that the Amended Complain, expounded and analyzed above at length, is not "so vague and ambiguous" that PTG could not "reasonably be required to make a responsive pleading." *Country Classics,* 780 F. Supp. 3d at 371. The Amended Complaint provides adequate notice of the allegations upon which Plaintiffs' theories of liability are based under the applicable statutory and common law, as well as the forms of relief sought in the matter. The Amended Complaint states the dates on which PTG's conduct allegedly took place, as well as sufficient facts suggestive of the proscribed conduct alleged. PTG is apprised of the essential factual background of the instant matter - the who, what, when, where, and how - giving it a fair notice of the claims asserted. Without discovery, Plaintiffs are unable to name the still unidentified members of PTG's staff, employees, servants, or agents. It is unreasonable to expect Plaintiffs at the outset of litigation to produce information in the complaint that they do not possess and can only obtain through discovery. It does not go unnoticed that PTG controls access to many of the key people, documents, and places at issue which are necessary to develop the facts in greater detail. Specifically, PTG possesses the relevant documents as to the staffing of the facility, the list of individuals responsible for the care of Decedent, the efforts made to monitor Decedent, and the

observations PTG's staff made as to Decedent's condition following his fatal fall. Thus, the motion for a more definite statement will be denied.

## IV. Conclusion

For the above-stated reasons, Defendant PTG's Motion to Dismiss, Motion to Strike, and Motion for a More Definite Statement (Doc. 20, §§ A-C) will be denied.

An appropriate order follows.


August 2, 2017 /s/ A. Richard Caputo
Date                                            A. Richard Caputo
                                                         United States District Judge